UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

RAYMOND LEE KYLE,

           Plaintiff,           Case No. 1:20-cv-472

v.                                      Honorable Paul L. Maloney

GREGORY L. SKIPPER et al.,

           Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I.    Factual allegations

Plaintiff presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Michigan Reformatory (RMI) in Ionia, Ionia County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the following RMI officials: Warden

Gregory Skipper; Food Service Director M. Reynolds; and Kitchen Worker Unknown Clingersmith.

Plaintiff alleges that, in May 2018, during the month of Ramadan,[1] he picked up his evening meal bag from the cafeteria, for consumption after sundown. Just after sundown, he began to prepare his evening meal. He discovered that the peanut butter and jelly were mixed together.[2] Plaintiff initially believed the delivery of the combined peanut butter and jelly was accidental, but it continued over the next days. Plaintiff complained, asserting that he was a borderline diabetic and that he tried to maintain his blood sugar levels through diet. He requested separate containers of peanut butter and jelly, permitting him to choose not to eat the jelly.

At some point, Plaintiff convinced an unknown kitchen worker to provide him with the peanut butter and jelly in separate containers. The following day, however, Defendant Clingersmith intervened, stating that food services did not accommodate special requests unless a medical detail was provided as verification of need.

Plaintiff alleges that close to 50 percent of Ramadan bagged meals included peanut butter and jelly. Plaintiff argues that, as a result of Defendants' decision to continue mixing the peanut butter and jelly, which he believed he should not eat in order to manage his blood sugar, he received an insufficient number of calories during the month of Ramadan.

Plaintiff also alleges that he and other Muslim prisoners were not being let out of their cells to use the microwave ovens to heat up their meals. After the issue was raised at a Warden's Forum, MDOC officials allegedly retaliated against Muslim prisoners by permitting

---

[1] Ramadan was celebrated from May 15 to June 14, 2018.

[2] Although the complaint alleges that the peanut butter and jelly were "mixed" together, his grievance indicated that the peanut butter was "mixed/soaked in the same container with the jelly" and that the "peanut butter and jelly were both packed in the same ½ inch clear pastic container." (Step-II grievance, ECF No. 1-6, PageID.35.)

them to use the microwaves, but only to heat up the items contained in the Ramadan meal bags. Plaintiff argues that the restriction prevented Plaintiff from supplementing his diet with other foods, to replace the missing calories from the peanut butter and jelly.

Plaintiff again attempted to speak with Defendant Clingersmith. He explained that he was being treated unfairly, because, if it was not Ramadan and he was able to go to the chow hall, he would have been able to select peanut butter separately from the jelly. Defendant Clingersmith allegedly told Plaintiff that he could choose either to skip eating the mixed peanut butter and jelly or go to the chow hall for his meals.

Plaintiff filed a grievance on May 24, 2018. He was not heard on his grievance until June 13, 2018, when Defendant Reynolds met with Plaintiff. Reynolds acknowledged that the review was late. Reynolds asked why Plaintiff had not requested diet jelly. Plaintiff responded that it would not have done any good, since he still would have received the mixed peanut butter and jelly. Defendant Reynolds issued a response to the Step-I grievance on June 15, 2020. The response indicated that, while the peanut butter and jelly were in the same "slot" on the food tray, Plaintiff still could choose what to eat. Reynolds also indicated that Plaintiff could have requested diet jelly, but did not. Reynolds found that Plaintiff had merely demonstrated a preference for his preferred meal service; the kitchen did not receive documentation for a medical diet. (Attach. F to Compl., ECF No. 1-6, PageID.34.) Plaintiff complains that unspecified facts in the grievance response are false.

Plaintiff appealed to Step II. Defendant Skipper responded, concluding that the Step-I grievance response was appropriate. Plaintiff then appealed to Step III. MDOC Manager of the Grievance Section, Richard D. Russell, denied the Step-III grievance on November 28, 2018.

Plaintiff alleges that Defendant Clingersmith violated Plaintiff's rights under the First and Fourteenth Amendments by depriving him of adequate nutrition during Ramadan and encouraging Plaintiff to solve his problem by eating with the general population. In addition, Plaintiff alleges that Defendant Reynolds violated his First and Fourteenth Amendment rights depriving him of adequate nutrition, thereby substantially burdening his religious right with discomfort and hunger. Finally, Plaintiff alleges that Defendant Skipper knew or should have know of the alleged First and Fourteenth Amendment violations and therefore is liable for them.

Plaintiff seeks declaratory relief, together with $1.5 million in each compensatory and punitive damages, together with a similar amount in mental and emotional damages.

## II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not

'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III. First Amendment

Plaintiff contends that Defendants violated his rights under the First Amendment, by placing peanut butter and jelly in the same container during all Ramadan meals that included peanut butter. Plaintiff asserts that, in so doing, they prevented Plaintiff from receiving adequate nutrition because Plaintiff exercised his First Amendment right to practice his religion.

While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First Amendment protection to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). To establish that this right has been violated, Plaintiff must establish that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) Defendant's behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224-25 (6th Cir. 1987); *see also Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001)

(same); *Bakr v. Johnson*, No. 95-2348,1997 WL 428903, at *2 (6th Cir. July 30, 1997) (noting that "sincerely held religious beliefs require accommodation by prison officials").

Plaintiff fails to demonstrate that Defendants' mixing of peanut butter and jelly infringed upon his sincerely held religious beliefs. Nor does Plaintiff allege that the meals provided to all prisoners who observed Ramadan provided insufficient calories. In fact, Plaintiff does not even allege that the meals he received during Ramadan provided him inadequate calories. Instead, he alleges that, as a borderline diabetic, he attempted to control his blood-sugar level through diet. He therefore refused to eat the peanut butter when it had been placed in a container with jelly, because it was contaminated with the jelly. Thus, no facts suggesting that the meals themselves placed a substantial burden on Plaintiff's sincerely held religious beliefs. Plaintiff therefore fails to state a First Amendment claim based on the mixing of peanut butter and jelly.

Moreover, Plaintiff fails entirely to allege that the use of a microwave was necessary to meet the requisite dietary restrictions of his religion. Plaintiff expressly alleges that he was provided meals during Ramadan, even if he elected not to eat a small portion of some meals. Plaintiff therefore fails to allege facts showing that Defendants' restrictions on the use of the microwave placed a substantial burden on his sincerely held religious beliefs.

## IV.     Fourteenth Amendment—Equal Protection

Plaintiff simply declares that placing the peanut butter with the jelly violated his rights under the Fourteenth Amendment. The Court assumes that Plaintiff intends to raise an Equal Protection claim.

The Equal Protection Clause commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307,

6

312 (1976). The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006); *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) ("To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'"). An "equal protection" plaintiff must be similarly situated to his comparators "in all relevant respects . . . ." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992); *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011); *see also Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) ("'Similarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'"); *Tree of Life Christian Schools v. City of Upper Arlington*, 905 F.3d 357, 368 (6th Cir. 2018) ("A plaintiff brining an equal protection claim must be 'similarly situated' to a comparator in 'all relevant respects.'").

The Court previously has concluded that Plaintiff does not state a deprivation of his First Amendment rights, because he fails to show that neither the placement of peanut butter and jelly in the same container nor the restrictions on the use of the microwave placed a substantial burden on his central religious beliefs. Further, Plaintiff does not allege that he was treated differently with respect to the use of the microwave than prisoners who practiced other religions or no religion at all. In addition, Plaintiff does not suggest that he is a member of a suspect class, and "prisoners are not considered a suspect class for purposes of equal protection litigation." *Jackson v. Jamrog,* 411 F.3d 615, 619 (6th Cir. 2005); *see also Wilson v. Yaklich,* 148 F.3d 596, 604 (6th Cir. 1998).

Because neither a fundamental right nor a suspect class is at issue, Plaintiff's claim is reviewed under the rational basis standard. *Club Italia Soccer & Sports Org., Inc. v. Charter*

7

*Twp. of Shelby,* 470 F.3d 286, 298 (6th Cir. 2006). "Under rational basis scrutiny, government action amounts to a constitutional violation only if it 'is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational.'" *Id.* (quoting *Warren v. City of Athens,* 411 F.3d 697, 710 (6th Cir. 2005)). To prove his equal protection claim, Plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Plaintiff wholly fails to demonstrate that he was treated differently than other similarly situated prisoners. According to his allegations, Plaintiff received the identical Ramadan meals as all other prisoners who observed Ramadan. In addition, Plaintiff was not similarly situated to prisoners who received their meals in the chow hall during the month of Ramadan. In order to observe his religious fast, Plaintiff could not attend the regular chow hall or eat during normal meal hours, but instead requested and received bagged meals to be consumed after sunset.

Further, to the extent that he alleges that he could not use the microwave after sunset to heat items other than his Ramadan meal, Plaintiff again fails to identify any similarly situated prisoner who was treated differently. According his his allegations and attached affidavits, all Ramadan-observing prisoners were subject to the same microwave limitations. He therefore was treated identically to those prisoners.

Moreover, Plaintiff makes no allegation that other prisoners were permitted to use the microwave during the hours after sunset to heat up foods that were not provided in a meal bag. As a result, Plaintiff fails to demonstrate that he was treated differently than any similarly situated prisoner. He therefore fails to state an equal protection claim.

## V. Fourteenth Amendment—Due Process

In asserting a violation of the Fourteenth Amendment, Plaintiff arguably intends to allege that Defendants Reynolds and Skipper violated his right to due process by failing to handle his grievance in a timely way and by making false statements in the grievance responses.

Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001). Because Plaintiff has no liberty interest in the grievance process, Defendants' conduct did not deprive him of due process.

## VI. Eighth Amendment

Although Plaintiff does not directly allege an Eighth Amendment violation, his allegations concerning the inadequacy of his diet during the month of Ramadan arguably implicate the Eighth Amendment.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson*

9

*v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998).  The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement."  *Rhodes*, 452 U.S. at 348 (citation omitted).  Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.  In order for a prisoner to prevail on an Eighth Amendment claim, a prisoner must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).

While "the Eighth Amendment imposes a duty on officials to provide . . . adequate . . . food," *Young ex rel. Estate of Young v. Martin*, 51 F. App'x 509, 513 (6th Cir. 2002) (citing *Farmer*, 511 U.S. at 832), the Constitution "does not mandate comfortable prisons," *Rhodes*, 452 U.S. at 349.  "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347).  As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

Under these authorities, the deprivation of a few meals for a limited time generally does not rise to the level of an Eighth Amendment violation.  *See Cunningham v. Jones*, 667 F.2d 565, 566 (6th Cir. 1982) (per curiam) (providing a prisoner only one meal per day for fifteen days did not violate the Eighth Amendment, because the meals provided contained sufficient nutrition to sustain normal health); *Davis v. Miron*, 502 F. App'x 569, 570 (6th Cir. 2012) (denial of seven

meals over six days is not an Eighth Amendment violation); *Richmond v. Settles*, 450 F. App'x 448, 456 (6th Cir. 2011) (same); *see also Berry v. Brady*, 192 F.3d 504, 507-08 (5th Cir. 1999) (denial of a few meals over several months does not state a claim); *Staten v. Terhune*, No. 01-17355, 2003 WL 21436162, at *1 (9th Cir. June 16, 2003) (deprivation of two meals is not sufficiently serious to form the basis of an Eighth Amendment claim); *Cagle v. Perry*, No. 9:04-CV-1151, 2007 WL 3124806, at *14 (N.D.N.Y. Oct. 24, 2007) (deprivation of two meals is "not sufficiently numerous, prolonged or severe" to give rise to an Eighth Amendment claim).

In *Richmond*, for example, the Sixth Circuit determined that a prisoner who was deprived of five meals over three consecutive days, and a total of seven meals over six consecutive days, did not state a viable Eighth Amendment claim, because he "does not allege that his health suffered as a result of not receiving the meals." *Richmond*, 450 F. App'x at 456. Similarly, in *Cunningham*, the Sixth Circuit determined that providing a prisoner only one meal a day for over two weeks was not an Eighth Amendment violation, because the meals provided were adequate to sustain normal health. *Cunningham*, 667 F.2d at 566.

Here, Plaintiff does not allege that Defendants failed to provide him adequate food. Indeed, he attaches a copy of the Ramadan menu for 2018. (Attach. C to Compl., ECF No. 1-3, PageID.22-25.) Although Plaintiff alleges that peanut butter was part of approximately 50 percent of the Ramadan meals, the menus on which peanut butter appeared included many other items. For example, the dinner menu on June 7, 2018, included the following: a #30 scoop of peanut butter; a #60 scoop of jelly; 1 cup of green beans; 3 carrot sticks; 3 celery sticks; 2 slices of wheat bread; 1 banana; 1 sugar cookie; and 1 cup of milk. The evening meal on June 8, 2018, included similar items: a #30 scoop of peanut butter; a #60 scoop of jelly; 2 slices of wheat bread; 3 carrot sticks; 1 apple; 1 banana; ½ cup of pudding; and 1 cup of fortified regular beverage. (*Id.*,

11

PageID.25.) Even assuming that Plaintiff's pre-diabetes led him to avoid the peanut butter and jelly, he still received significant calories in his bagged meals. Plaintiff states that he suffered hunger pangs, but he does not allege that his health suffered as a result of the deprivation or that the meals he did receive were inadequate to sustain his health. Consequently, Plaintiff does not state a plausible Eighth Amendment claim based on the contamination of the peanut butter with the jelly. *See Iqbal*, 556 U.S. at 679 (noting that the allegations must permit an inference of more than a "mere possibility" of misconduct).

Moreover, the Eighth Amendment is not concerned with whether Plaintiff has access to a microwave to heat up non-prison-provided food. "[C]old food . . . is an ordinary incident in prison life." *Thaddeus-X v. Blatter*, 175 F.3d 378, 404 (6th Cir. 1999) (Surheinrich, J., dissenting) (collecting cases); *see also Laufgas v. Speziale*, 263 F. App'x 192, 198 (3d Cir. 2008); *Strauss v. Ray*, No. 99-5370, 2000 U.S. App. LEXIS 14525, at *7 (6th Cir. Jun. 19, 2000) (citing *Hamm v. DeKalb Cty.*, 774 F.2d 1567, 1575 (11th Cir. 1985) ); *Brown-El v. Delo*, 969 F.2d 644, 648 (8th Cir. 1992) (holding that prisoner's claim that he was denied his Eighth Amendment rights when he was served cold food was frivolous); *Jackson v. Heyns*, No. 13-636, 2013 WL 6007503, at *6 (W.D. Mich. Nov. 13, 2013) (holding that regular receipt of cold or lukewarm food by segregation prisoners does not implicate the Eighth Amendment). As a consequence, Plaintiff's lack of access to a microwave to heat non-prison-provided food falls short of denying the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson*, 148 F.3d at 600-01.

For these reasons, Plaintiff fails to state an Eighth Amendment claim.

**VII. Supervisory Liability**

Finally, even were Plaintiff able to allege a constitutional violation against Defendant Clingersmith, which he does not, Plaintiff would fail to state an actionable claim against

12

Defendants Reynolds and Skipper. Plaintiff makes no specific factual allegations against Reynolds and Skipper, other than that they should have known that the mixing of peanut butter with jelly would deprive him of adequate food and that they failed to timely handle and improperly denied his grievances.

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Reynolds and Skipper engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the

Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated:  June 30, 2020                         /s/ Paul L. Maloney
                                              Paul L. Maloney
                                              United States District Judge